## Case No. 10,381.

### NUSBAUM v. EMERY.

[5 Biss. 393;[1] 5 Chi. Leg. News, 542; 18 Int. Rev. Rec. 77.]

Circuit Court, N. D. Illinois. Aug. 11, 1873.

COURT WILL RETAIN JURISDICTION TO PROTECT REAL PARTY IN INTEREST — MONEY HELD BY NOMINAL PARTY—WHEN ORDERED INTO COURT.

1. Where by collusion between the nominal parties to the record, a suit had been prosecuted to final judgment in the state court, pending proceedings in this court, this court will not allow the proceedings here to be dismissed against the wish of the real party in interest.

2. The fact that the defendant in the state court did not plead the pendency of the suit in this court is evidence of collusion between the parties.

3. Where money in controversy in a suit is held by a nominal party, solely as trustee for another person not a party to the record, the court, at the instance of the party in interest, may order it to be paid into court.

4. Where the holder of money, being an officer of the government, had ceased to be such during the pendency of the suit, the court should order the money to be paid into court.

This was a motion by the plaintiff [Adolph Nusbaum] in similar cases, to set aside an order reinstating the cases on the docket, and also a motion by Isaac P. Tice for a rule upon defendant [Enoch Emery] to show cause why he should not pay into court the money in controversy in the several cases. The suits were brought in the Peoria circuit court by distillers in the Peoria district, against the defendant, the United States collector for that district, to recover money deposited by them severally, under the revenue law, to pay for meters for their distilleries, to be furnished by Tice, under the regulations of the commissioner of internal revenue. The plaintiffs being dissatisfied with the meters, and their use having been soon abandoned, brought these suits, claiming the laws and regulations requiring the use of these patented meters were unconstitutional and void. The cases were removed to this court on the application of the defendant, and on the 25th of February, 1873, the demurrer to defendant's pleas was overruled [Case No. 10,-380]; but no formal judgment entered, and twenty days given plaintiffs to elect whether they would stand by their demurrer or withdraw their demurrer and plead to the merits. The record stood in this manner until about July 1st, when the attorney for the defendants appeared and asked that judgment be entered upon the demurrer. Notice

was forwarded to the attorneys of the plaintiff, and on the 8th of July plaintiff's attorney came into court and dismissed the suits.

C. A. Roberts, for plaintiff.

Harding, McCoy & Pratt, for defendant.

J. R. Doolittle & Son, for Isaac P. Tice.

BLODGETT, District Judge. At the time of the dismissal of these suits about July 1st, there was no appearance on the part of the defendant, and it did not occur to the court that there was any impropriety in the plaintiff's dismissing his own suit, as probably would have been the result if judgment had been entered upon the demurrer unless my attention had been called to the special stipulations hereafter referred to.

[2] [This case, and several others now on the docket involving the same questions, are brought before the court on a motion by the plaintiffs to set aside an order entered a few days since reinstating the cases upon the docket, and also upon a motion by Isaac P. Tice for a rule on defendant to show cause why he should not be ordered to pay into court the money in controversy in the cases. The history of these cases is substantially this: By the internal revenue law of July, 1868 [15 Stat. 125], it is provided that the commissioner of internal revenue may prescribe a meter to be used in all distilleries for the purpose of measuring the spirits made therein. And by a regulation subsequently adopted by the internal revenue bureau, the meters made and patented by Isaac P. Tice were adopted by the government and required to be used in all distilleries. The defendant Emery was, in the fall of 1868, and for some years thereafter, the collector of internal revenue in the Peoria district in this state, and the plaintiffs in these several suits were distillers at Peoria. Being thus required to use the Tice meters in their distilleries, they made the requisitions provided by the "regulations" on the collector of their district for "meters," and paid into the collector's hands the purchase price of the meters so ordered. The collector thereupon ordered the meters from Tice, and the same were duly shipped to the distillers so ordering them. On the arrival of the meters the plaintiffs were dissatisfied with their operation, and their practical use was soon abandoned. The several distillers who had so paid over their money to the defendant and ordered meters subsequently brought suits in assumpsit for money had and received against Emery in the Peoria circuit court, to recover back the purchase money they had respectively paid for their meters. They also respectively filed bills in chancery against Emery and Tice in the Peoria circuit court, alleging in substance that the meters were worthless, that the regulations of the bureau of internal revenue requiring the use of the meters in distilleries were unconstitutional and void, and alleging

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [From 5 Chi. Leg. News, 542.]

also that Tice, to whom the money was owing, was insolvent, and prayed that Emery be enjoined from paying the money over to Tice, and that he be decreed to pay it back to them. All these cases were removed to this court, on the application of Mr. Emery, where they were pending at the time of the Chicago fire. After the fire, the record was restored in the common law cases, but the files have not been restored in the chancery cases.

[To the declarations restored in the several cases at common law, the defendants pleaded, first, the general issue, and, secondly, a special plea setting up in substance that Emery, the defendant, was the collector of internal revenue for the Peoria district; that the money referred to in the plaintiff's declaration was paid to Emery, as such collector, as the purchase money for Tice meters ordered by the plaintiff, and that the money was the money of Tice, and not the plaintiff's, and that Emery did not hold the money for the plaintiff, but held it for Tice, and stating the regulations and proceedings under the internal revenue law by which the money had been paid over. To this plea the plaintiffs filed demurrers in all the cases, joinder was had upon this demurrer, and all the cases were thereupon submitted to the court. The matter was held under advisement for some time by the court, during which time it was pretty carefully and thoroughly examined, and on the 25th of February last the demurrers taken by plaintiffs were overruled by the court; but inasmuch as the attorneys for the plaintiffs in the cases were not in court at the time, and as the court did not, under the circumstances, deem it expedient to enter judgment upon the demurrer, as might have been done, until plaintiffs' counsel could have time to decide upon the course they would pursue, an entry was made that the plaintiffs should be allowed twenty days to elect whether they would stand by their demurrer, or withdraw their demurrer and plead. The record stood in this manner until some time in the month of July, when the attorney for the defendants appeared and asked that judgment be entered upon the demurrer. Notice was forwarded to the attorneys of the plaintiffs, and on the 8th of July, I think, Mr. Ingersoll, of the firm of Ingersoll & McCune, plaintiff's attorney, came into court and dismissed the common law suits. There was no appearance at that time on the part of the defendant, and it did not occur to the court that there was any impropriety in the plaintiff's dismissing his own suit, as probably that would have been the result, if judgment had been entered upon the demurrer, unless my attention had been called to the special stipulations hereafter referred to.] [2]

A few days after this dismissal it was brought to the notice of the court that after the decision upon this demurrer a suit had

been brought by one of the plaintiffs in these common law cases, D. C. Farrell, upon the equity side of the circuit court of Peoria county, against Emery and Tice, setting up that he, the complainant, was the owner, in his own right, of the money which he had paid for the meter which he had ordered, and was the owner, by assignment, from the various other distillers, of what they had respectively paid; that the money was wrongfully withheld by Emery, the collector of the district; and praying relief in the premises. The suit thus commenced proceeded to hearing, upon the default of Emery, Tice being brought into court by publication, and his default being also entered, a final decree was entered on the 25th of June last, and on the 7th day of July, the day before these cases were dismissed, as the record now produced in court shows, Mr. Emery paid over to Farrell, the complainant in that suit, the amount of money in his hands growing out of the Tice meter transaction.

From the time these cases were first brought to the notice of the court it has been apparent upon the record that this was really a suit between these various distillers and Tice, and not between these men and Emery; that Emery had no interest in the matter, was merely a stakeholder of the money, and was in no wise concerned in the result of the suit. His plea stated that substantially, and the various stipulations which have been placed upon the record in the case, and the statements of counsel, have shown that counsel who appeared for Emery appeared, in point of fact, at the instance of Tice, were employed by Tice, and acted in the interest of Tice, and that Emery's name was merely used as the nominal defendant, the money in his hands being the money of either the plaintiff or of Tice, and not in any event the money of Emery.

Counsel who had appeared in the case for the defendant, under these circumstances called the attention of the court, by an affidavit, to the fact that this suit had been brought in Peoria, that Emery had paid these sums over to the complainant Farrell, and asked upon this affidavit that these cases should be reinstated, claiming that he was entitled to a judgment upon the demurrer, and to an order that the money should be paid to Tice, producing a stipulation, entered into between the counsel about the 30th of March, 1870, a copy of which was preserved from the fire of October 9, 1871, by having been transmitted to counsel engaged in certain cases of the same nature in New York. This stipulation is as follows:

"Enoch Emery ads Nusbaum et al. In all the Tice meter cases, including the above, pending in the United States court, Northern and Southern district of Illinois, and in state courts, we agree that the trial of the one shall be conclusive of all other cases where the facts are substantially alike. And that, upon the trial of that case, the certifi-

---

[2] [From 5 Chi. Leg. News, 542.]

cates of United States collectors as to the time when meter was ordered, and when bill of lading was received, and of all other facts of record in the collector's office, shall be taken without objection.

"And we further agree that for the distillers we will make and rely upon the following points: First—That the law compelling the distillers to use the meters is unconstitutional, and that the commissioner of internal revenue had no legal right to compel distillers to purchase or use the same at their expense. And that the meter was of no value. Of all which Tice had notice.

"The legal questions shall be argued before the court, before any proof is taken, and the court may give time to take such evidence as the ruling of the court may render appropriate. We will argue the case in the United States circuit court, Northern district, Illinois.

"The defendant insists that the value or want of value is immaterial in the absence of fraud or bad faith on the part of Tice.

"All the orders of the revenue department may be read by either party, on hearing, argument or trial, and should plaintiffs finally be beaten, then the court may order the money in the collector's hands, in all cases, to be paid to Tice.

"(Signed)     Ingersoll & McCune,
"For plaintiffs in said several cases.
"(Signed)     Doolittle & Norton,
"Defendant's attorneys in said several cases."

All the cases in this court, on the common law side, were submitted on demurrer, and, as I understood, it was expected that they would be substantially disposed of by the demurrer. It was only because the plaintiffs were not in court by their counsel at the time the demurrer was disposed of, that the matter was allowed to rest. The decision was given in the winter time, in precarious weather, and I thought it very possible they might not have received the notice, or that it might have been impossible for the plaintiffs' attorneys to be here on the appointed morning. Therefore time was given them, simply as a matter of courtesy, as I supposed, in order that they might decide whether they would abide by the demurrer or whether they would still insist upon some proof being taken; but, as I said before, I understood that all the important questions in the cases were disposed of, and that any further action would be merely pro forma.

On the entering of the motion to reinstate the cases I sustained it, on the ground that they had been improvidently dismissed.

Defendants' attorneys then asked for a rule against Mr. Emery, to show cause why he should not pay this money into court. The rule was granted. On the return of the rule, Mr. Emery appeared, by his counsel, and moved to set aside the order reinstating the cases, and to dismiss or re-dismiss the cases. The motions for a rule against Emery to pay the money into court and to dismiss the cases were argued a few days since, and, after mature consideration, I can see no reason for changing the order formerly made on the reinstatement of the cases on the record. I think in the present status of the record, and in view of what has transpired elsewhere, it is the duty of this court to retain these cases within its own control, and within its jurisdiction, for the purpose of protecting the rights of the real parties in interest in the litigation.

I can not look upon the proceedings at Peoria, whereby an attempt, at least, was made to obtain the adjudication of the Peoria circuit court upon the matters in controversy between the parties, as anything less than a fraud upon the jurisdiction of this court, and the real parties interested in the suits here. It seems to me that this is as mild a term as the court should, in justice to itself and to the parties, apply to the transaction, although it is not intended to impute any intentional fraud to the Peoria circuit court.

Here was a court of competent jurisdiction, and having jurisdiction of the subject matter and parties, where the case had already been heard, where the delay in entering the final judgment was purely out of courtesy to the plaintiffs, and where the court had the undoubted right, under the stipulation, to order the subject matter of the litigation to be paid into court for the purpose of protecting the rights of the party in interest. In the face of these stipulations, and the rights of Tice, the plaintiffs, with the connivance of the defendant, and, as it appears, by collusion with him, enter into an agreement by which a suit is to be instituted before another tribunal, decree rendered, and the money paid over to the plaintiffs on that decree.

I say there must have been collusion between these parties, because I can hardly conceive that these plaintiffs could, without an understanding with the defendant, have deemed it possible for them to carry through, to a successful termination, this late Peoria suit. It was Emery's right to have plead at once to that suit the pendency of these suits, and the plaintiffs must have known he would have done so if he was not acting in their interest and in collusion with them. This court cannot but conclude from the admitted facts that there was an understanding between Emery and these plaintiffs in regard to the bringing of the suit in Peoria, and that the suit was brought by collusive arrangements between them. The plaintiffs would not have dared to have brought such a suit; they would have known they would have been met on the threshold by a plea in abatement which would have inevitably thrown them out of court, if the defendant was acting in good faith for the interest of Tice. But, so far from that being the case, no such plea was interposed; the rights of the party in interest are not at all protected by Emery, but

he suffers the court to take default against himself and Tice, the party in interest, and allows decree to be entered simply protecting himself, as he states in his own affidavit, by taking a bond of indemnity from Farrell. By doing that, he shows that he has no confidence, after all, in the validity of the proceedings, because he must be held to know that the decree of a court of competent jurisdiction, honestly rendered, is protection enough, and that he needed no bond or other indemnity. But the whole transaction, taken together, satisfies me that this was a somewhat ingenious attempt to evade the jurisdiction of this court, and to evade the stipulations which these plaintiffs had themselves entered into, and which were binding on them in this forum.

Without charging that Mr. Emery intended to be himself a party to this fraud, I think his position must probably be construed to be about this: He is a neighbor of these parties; he has heard their assertions made so repeatedly, and reiterated so frequently, in regard to this meter being worthless, that he perhaps sympathizes with them in their attempts to recover this money back. He perhaps feels that they should not have been compelled to purchase these meters, and that, therefore, he, as a good neighbor, ought to facilitate their effort to get back their money. But he certainly ought not to do it at the expense of violating his own stipulations, made in the interests of the party whom he really represented. His relation to Mr. Tice was that of a trustee for him, and he ought not to have been guilty of a collusive arrangement by which the funds belonging to Mr. Tice should be placed in any other custody than that in which they were at the time of the commencement of the original suit.

Therefore, I think the court did right in restoring the cases in the first instance to the docket, setting aside the order of dismissal as having been improvidently entered, and requiring the rule to be entered that the defendant should show cause why this money should not be paid into court.

I have no doubt but at common law, where the record shows that money is held by a nominal party, either plaintiff or defendant, solely as trustee for the benefit of some other person, not a party to the record, it is the right of the court, at the instance of the party in interest, to order the money in controversy to be brought into court.

I say I have no doubt that that is one of the common law powers of a court of law as well as of a court of equity, but if I had any doubt on this question, it would be entirely set at rest by the stipulation in the case. The pleas of Emery, the defendant, state emphatically and solemnly that he has no interest in this money. The stipulation provides that whenever the court has disposed of these cases, it shall order the money to be paid to Tice, if the decision be in his favor, and the court can only do that by ordering the money to be first paid into court, and then order it paid to Tice,—at least that would seem the most regular way.

At the time these suits were brought, Mr. Emery was an officer in the United States government, and the proper custodian of the money. Since the bringing of these suits, he has ceased to be such officer, and is no longer the proper custodian of this money, either for Tice or the government,—the controversy being in one sense between the distillers and the government.

I can, therefore, see no reason why the court should not make an order that the defendant pay this money into court. I think it a duty the court owes to itself and to the parties, that it should not allow its jurisdiction to be evaded by a cunning shift of this character, and that the administration of justice between the parties litigant in this tribunal should not be thwarted by a case of this kind.

An order will therefore be entered that Mr. Emery pay the money in all these cases into court within twenty days from this time.

Payment to a nominal plaintiff in a suit is not a satisfaction of the debt. Triplett v. Scott, 12 Ill. 137.